IRVING R. BOODY & CO.,
INC., Petitioner,

v.

WIN HOLDINGS INTERNATIONAL,
INC., Respondent.

No. 02 Civ. 2153(PKL).

United States District Court,
S.D. New York.

July 30, 2002.

Kenneth A. Schulman, Pryor, Cashman, Sherman & Flynn, LLP, New York City, for Petitioner.

Gerald Arougheti, Hashinsky & Arougheti, Richmond Hill, NY, for Respondent.

## MEMORANDUM ORDER

LEISURE, District Judge.

In the instant action petitioner, Irving R. Boody & Co., Inc., ("IRB") seeks confirmation of an arbitration award in the amount of $104,735.51 pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9. Respondent, Win Holdings International, Inc. ("Win Int'l") contests the validity of the arbitration award and seeks to litigate the underlying dispute in this Court under Connecticut law. For the reasons discussed below this Court con-firms the arbitration award in the sum of $104,735.51 with costs and post award pre-judgment interest.

## Background

Petitioner, IRB, is a New York corporation with its principal place of business at 11 Penn Plaza, New York, New York. Respondent, Win Int'l, is a Connecticut corporation with its principal place of business in Norwich, Connecticut.[1] The parties entered into agreements whereby IRB would sell textile fabric to Win Int'l. The agreements were negotiated through an independent broker, B.J. Stein Ltd., and ratified by the issuance of sales notes to each party. The sales notes, dated February 17, 2000, March 6, 2000, and August 25, 2000 each contain a broad arbitration clause and choice of law and forum clause. *See* Sales Note 200244 dated February 17, 2000, issued by B.J. Stein, Ltd., attached as Ex. A to Affidavit of Anthony Scocco, sworn to on June 6, 2002 ("Scocco Aff."); Sales Note 300320 dated March 6, 2000, issued by B.J. Stein, Ltd., attached as Ex. B to Scocco Aff.; Sales Note 200836 dated August 25, 2000, issued by B.J. Stein, Ltd., attached as Ex. A to IRB's Notice of Petition to Confirm Arbitration Award. The choice of forum clause in each note dictates that disputes will be resolved in New York City, and that New York law will govern. *See id.* The respondent did not sign the notes.

Subsequently, IRB sent a confirmation of the sales notes to the respondent. The

---

1. Subject matter jurisdiction in the instant matter is premised on diversity, as the parties are diverse and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332 (2002). It is beyond peradventure of doubt that although the FAA has created federal substantive law, the FAA does not confer subject matter jurisdiction. *See Greenberg v. Bear Stearns & Co.*, 220 F.3d 22, 25 (2d Cir.), *cert. denied*, 531 U.S. 1075, 121 S.Ct. 770, 148 L.Ed.2d 669 (2001); *Westmoreland Capital Corp. v. Findlay*, 100 F.3d 263, 264 (2d Cir. 1996). Thus, claims arising under the FAA require an independent ground for subject matter jurisdiction. *See Donel Corp. v. Kosher Overseers Ass'n of America, Inc.*, No. 92 Civ. 8377, 2001 WL 228364, at *2 (S.D.N.Y. March 8, 2001). Jurisdiction in the present matter based on diversity is proper, because the parties are diverse and the amount in controversy exceeds the $75,000 statutory minimum. *See* 28 U.S.C. § 1332 (2002).

confirmation reaffirmed that New York law would govern all disputes and that arbitration was the chosen method for resolving any disputes arising under the contract. *See* Sales Contracts from IRB to Win Int'l dated February 17, 2000; March 6, 2000; and August 25, 2000. At no point did respondent object to the sales notes or to the confirmations sent by petitioner. *See* IRB's Memorandum of Law In Support of Petition to Confirm Arbitration Award ("IRB's Memo"), at 3. Indeed, Christine Alessio of Decorative Screen Printers, a division of Win Int'l, sent a letter to the broker, B.J. Stein Ltd., discussing where the goods were to be shipped, but making no mention of any reservations or objections to the arbitration or choice of law clauses. *See* Letter from Christine Alessio to B.J. Stein Ltd., dated October 9, 2000, attached as Ex. C to Scocco Aff. ("Alessio Letter"). IRB alleges that although it tendered the goods detailed in the contract, it never received payment. *See* IRB's Notice of Petition to Confirm Arbitration Award ("Notice of Petition"), at 2. Conversely, respondent contends that the goods were never delivered, and further that no agreement for the sale and purchase of goods existed between the parties. *See* Win Int'l's Affirmation in Opposition ("Win Int'l's Opp."), at 1–3.

On May 30, 2001 IRB filed a Demand for Arbitration, thus commencing arbitration proceedings against Win Int'l pursuant to the General Arbitration Council of the Textile and Apparel Industries' Rules of the American Arbitration Association. *See* Demand for Arbitration. Petitioner contends that respondent in no way objected to the arbitration proceedings. *See* IRB's Memo at 3. Joseph Brodie was selected as an arbitrator and a hearing was held in the absence of the respondent in New York, New York on January 8, 2002. *See* Notice of Petition at 2. On February 19, 2002 the arbitrator determined that respondent was to pay petitioner an award

in the sum of $104,735.51. *See* Award of Arbitrator, *In re Arbitration Irving R. Boody and Win Holdings International,* dated Feb. 19, 2002, attached as Ex. C to Notice of Petition. Subsequently, respondent's attorney Richard Polivy, Esq. sent a letter dated March 4, 2002, stating that Win Int'l objected to the arbitration and denies entering into an agreement to buy textiles from IRB. *See* Letter from Richard Polivy, Esq. to International Centre for Dispute Resolution, dated March 4, 2000, attached as Ex. D to Win Int'l's Opp.

## Discussion

### I. Standard of Review

■ The confirmation of an arbitration award converts the final arbitration award into the judgment of the court. *See Warehall v. Pasternak,* No. 92 Civ. 9227, 1993 WL 437784, at *1 (S.D.N.Y. Oct.26, 1993) (Leisure, J.) (citing *Ottley v. Schwartzberg,* 819 F.2d 373, 377 (2d Cir.1987)). Arbitration awards are subject to a limited review, and the FAA provides that a court must grant a petition to confirm an arbitration award that is brought within one year of the date of the award unless the opponent of the award can establish one of the statutory bases for vacatur or modification of the award. *See In re Arbitration Between Millicom Int'l V.N.V. and Motorola, Inc.,* No. 01 Civ. 2668, 2002 WL 472042, at *5 (S.D.N.Y. Mar.28, 2002) (citing *Ottley,* 819 F.2d at 375). The four statutory bases are:

(1) Where the award was procured by corruption, fraud, or undue means.

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of

any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. . . .

9 U.S.C. § 10(a).

Although respondent's submission does not cite to 9 U.S.C. § 10(a)(4), respondent contests the authority of the arbitrator to decide the instant matter.[2] *See* Win Int'l's Opp. at 2. Respondent argues the parties did not agree to arbitration. *See id.* Under 9 U.S.C. § 10(a)(4) and the Second Circuit's holding in *Ottley*, if the parties did not agree to arbitration this Court would have to vacate the arbitration award. 819 F.2d at 376 (holding an arbitration award entered in a matter where the parties did not agree to arbitrate must be vacated). For the reasons discussed below, the Court rejects respondent's argument and finds that the parties were bound to arbitrate the instant action, and therefore the Court confirms the arbitration award.

## II. Enforceability of Arbitration Clause in Sales Notes

The FAA, 9 U.S.C. §§ 1–16, was enacted to promote enforcement of private agreements to arbitrate disputes. *See Chelsea Square Textiles, Inc. v. Bombay Dyeing and Mfg. Co. Ltd.*, 189 F.3d 289, 294 (2d Cir.1999); *I.K. Bery, Inc. v. Irving R. Boody & Co.*, No. 99 Civ. 10968, 2000 WL 218398, at *2 (S.D.N.Y. Feb.23, 2000). Federal courts are permitted to develop substantive law regarding matters of interpretation, enforceability and scope of arbitration agreements; however, state law remains dispositive on questions of contract formation. *See Doctor's Assocs., Inc., v.*

*Casarotto*, 517 U.S. 681, 686–87, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (holding that state law governs the issue of contract formation); *Graniteville Co. v. Star Knits of California, Inc.*, 680 F.Supp. 587, 588 (S.D.N.Y.1988) (same).

Win Int'l asserts that it never signed the sales notes or the confirmations, and thus it is not bound to the terms of the contract. It is well settled in New York, however, that contract formation is not dependent on a signature. "Though they do not expressly agree to arbitration and do not sign the broker's notes, buyer and seller nonetheless are bound to arbitrate in accordance with those documents when they merely retain them and proceed with the transaction." *In re Arbitration Itoman (U.S.A.), Inc. v. Daewoo Corp.*, 68 N.Y.2d 925, 927, 510 N.Y.S.2d 74, 502 N.E.2d 989 (1986). Thus, even a party who has not signed the sales note is obligated to object to it within a reasonable time. Otherwise, the party will be bound to the terms of the note, including a choice of law provision. *See Graniteville*, 680 F.Supp. at 590; (holding failure to object binds a party to all terms in the sales note); *Bery*, 2000 WL 218398, at *4 (same); *J.K. Knitting Mills v. Dorgin*, 273 A.D. 591, 78 N.Y.S.2d 488, 490 (1st Dep't 1948) (same). In the instant action, respondent never objected to the sales notes. *See supra*, Background at 2. Moreover, respondent actually sent letters that indicated it had received and was interested in continuing to receive goods from the petitioner. *See* Alessio Letter; *supra*, Background at 2. It was only upon notification of the arbitration award that Win Int'l contested the validity of these notes. Therefore, these notes and their arbitration and choice of law clauses are binding on Win Int'l. *See Graniteville*, 680 F.Supp.

2. Other than challenging the authority of the arbitrator, respondent has not raised any other bases for vacated or modifying the award under the FAA.

at 590; *Bery*, 2000 WL 218398, at *4; *J.K. Knitting Mills*, 78 N.Y.S.2d at 490.

▉ Win Int'l also argues that the sales broker who negotiated the agreement was not authorized to do so, and therefore the arbitration agreement is not binding. "[W]hen a broker negotiates a sale and then sends the parties a sales note containing an arbitration clause, the broker is deemed to have acted for both parties." *Bery*, 2000 WL 218398, at *3 (citing *Itoman (U.S.A)*, 68 N.Y.2d at 927, 510 N.Y.S.2d 74, 502 N.E.2d 989). Win Int'l is correct in stating that for a broker to bind another party, the broker must be acting pursuant to that party's authorization. *See id.* at *4. Ratification by failure to object, however, serves as the equivalent of prior authorization. *See Just In–Material Designs, Ltd. v. I.T.A.D. Assocs.*, 94 A.D.2d 103, 107, 463 N.Y.S.2d 202 (1st Dep't 1983), *aff'd*, 61 N.Y.2d 882, 474 N.Y.S.2d 470, 462 N.E.2d 1188 (1984); *J.K. Knitting Mills*, 78 N.Y.S.2d at 490. Thus, authorization can occur after the sales note is issued. Win Int'l's failed to object to the sales notes, and therefore the sales broker in the instant action was in effect authorized to negotiate on their behalf. *See Just In–Material Designs*, 94 A.D.2d at 107, 463 N.Y.S.2d 202; *J.K. Knitting Mills*, 78 N.Y.S.2d at 490. Accordingly, Win Int'l is bound to the terms of the sales notes, and was obligated to arbitrate under New York law any claim that arose out of the transaction at issue.

### III. Timeliness of Objection to Arbitration

▉ Petitioner contends that Win Int'l failed to object to the arbitration within the specified time limitations. Arbitration proceedings and regulations differ under the FAA and the New York law governing the matter. The FAA sets no time limit on a party's ability to challenge the arbitration. *See In re Application of Herman Miller, Inc.*, No. 97 Civ. 7878, 1998 WL 193213, at *3 (S.D.N.Y. Apr.21, 1998), *aff'd*, 173 F.3d 844, 1999 WL 132183 (2d Cir.), *cert. denied*, 528 U.S. 821, 120 S.Ct. 66, 145 L.Ed.2d 56 (1999). Rule 7503(c) of New York's CPLR dictates that a party must move to stay arbitration within 20 days of receipt of the demand for arbitration. *See* N.Y. C.P.L.R. § 7503(c) (McKinney 2002).

The Second Circuit has yet to affirmatively establish whether it accepts CPLR § 7503 as binding on the federal courts within its jurisdiction. In *DelCostello v. International Brotherhood of Teamsters* the Supreme Court held that borrowing state law limitation periods is a norm for federal courts. 462 U.S. 151, 171, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). The Second Circuit seems to have followed suit in affirming the *Miller* decision, holding that CPLR § 7503 applies to cases under the FAA. 173 F.3d 844, 1999 WL 132183; *see In re Arbitration Favara, Skahan, Tabaczyk, Ltd. v. Ewing*, No. 91 Civ. 7878, 1992 WL 80659, at *2 (S.D.N.Y. Apr.9, 1992) (Keenan, J.) (same); *Morgan v. Nikko Secs. Co. Int'l*, 691 F.Supp. 792, 795 n. 1 (S.D.N.Y.1988) (same). Several courts in the Southern District of New York, however, have held that the time limitation set forth by § 7503 does not apply to the FAA. *See Endriss v. Eklof Marine Corp.*, No. 96 Civ. 3137, 1998 WL 1085911, at *4 n. 5 (S.D.N.Y. July 28, 1998) (CPLR § 7503 does not apply to cases arising under the FAA); *Sandvik, Inc. v. Libby*, 762 F.Supp. 596, 599 (S.D.N.Y.1991) (same); *Rothberg v. Loeb, Rhoades & Co.*, 445 F.Supp. 1336, 1339 (S.D.N.Y.1978) (same).

Determining whether the 20 day limitation period applies is unnecessary for the resolution of the instant action, however, because respondent is bound by the arbitration clause in the sales notes. Thus, because petitioner has already successfully

brought an arbitration proceeding, the issue of the timeliness of the respondent's request for a stay is moot. *See Bery*, 2000 WL 218398, at *4 (holding that resolution of the limitations period was unnecessary because respondent was bound to arbitration clause due to their failure to object to the sales notes).

## IV. Post Award Prejudgment Interest

 IRB seeks post award prejudgment interest calculated at a rate of 9% accruing from the time of the issuance of the award, February 19, 2002, to the actual payment of the award. Although, post award prejudgment interest is at the discretion of the trial court, there is a presumption in favor of awarding such interest. *See In re Waterside Ocean Navigation Co. v. International Navigation, Ltd.*, 737 F.2d 150, 153–154 (2d Cir.1984); *GFI Secs. LLC v. Labandeira*, No. 01 Civ. 00793, 2002 WL 460059, at *8 (S.D.N.Y. Mar.26, 2002) (Keenan, J.) (upholding an award of 9% post award prejudgment interest); *In re Arbitration Soft Drink and Brewery Workers Union Local 812, IBT, AFL–CIO v. Ali–Dana Beverages, Inc.*, No. 95 Civ. 8081, 1996 WL 420209, at *3 (S.D.N.Y. July 25, 1996) (same). In diversity actions interest is to be calculated according to the state statutory rate. *See Commonwealth Assocs. v. Letsos*, 40 F.Supp.2d 170, 177 n. 42 (S.D.N.Y.1999) (holding post award prejudgment interest is governed by New York law because the case was brought on diversity grounds and because the arbitration agreement contained a New York governing law clause); *Amoco Transport Co. v. Dietze, Inc.*, 582 F.Supp. 804, 808 n. 5 (S.D.N.Y.1984) (holding post award prejudgment interest rate is to be determined under state law). The rate in New York is 9% per anum. *See*

N.Y. C.P.L.R. § 5004 (McKinney 2002). Because post award prejudgment interest is calculated from the date of the award and not the date of confirmation, *see Aferiat v. Grossman*, No. 96 Civ. 1774, 1998 WL 99797, at *12 (S.D.N.Y. Mar. 4, 1998), this Court awards IRB 9% annual interest on the judgment from February 19, 2002 until the date of payment of the award.

### Conclusion

For the foregoing reasons, the arbitration proceeding decided on February 19, 2002 in favor of the petitioner is HEREBY CONFIRMED. Accordingly, Win Int'l owes IRB a sum of $104,735.51, plus interest and costs.[3]

**SO ORDERED.**

---

3. Rule 54(b)(1) of the Rules of Civil Procedure dictates that a prevailing party is entitled to costs. *See* Fed.R.Civ.P. 54(b)(1). Petitioner has asked for costs and the Court grants this

request. Petitioner has not sought, and the Court does not grant Petitioner its attorney's fees.